**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

———————

**MARTIN GUBB,**

      *Plaintiff/Counter-Defendant,*

**CASE NO. 2:04-CV-72432**

**v.**

**HON JULIAN ABELE COOK, JR.**

**P&M SERVICES, INC.,**

      *Defendant/Counter-Plaintiff.*

**and**

**P&M SERVICES, INC.,**

      *Plaintiff/Counter-Defendant,*

**CASE NO. 05-CV-71576**

**v.**

**HON JULIAN ABELE COOK, JR.**

**ANDRE LAVALLEE,**

      *Defendant/Counter-Plaintiff.*

---

| | |
|---|---|
| MARK A. CANTOR (P32661) | MARK S. DEMOREST (P35912) |
| SETH E. RODACK (P55738) | NATALIE C. NAJARIAN (P67614) |
| **BROOKS KUSHMAN P.C.** | **LAW OFFICES OF MARK S. DEMOREST, PLLC** |
| 1000 Town Center | 19853 W. Outer Drive |
| Twenty-Second Floor | Suite 100 |
| Southfield, Michigan 48075-1238 | Dearborn, Michigan 48124 |
| Tel: (248) 358-4400; Fax: (248) 358-3351 | Tel: (313) 565-1330; Fax: (313) 565-1318 |

---

# GUBB AND LAVALLEE'S MOTION
# FOR SUMMARY JUDGMENT OF NO LIABILITY



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel (248) 358-4400
Fax (248) 358-3351

www.brookskushman.com

NOW COMES Martin Gubb ("Gubb") and Andre Lavallee ("Lavallee"), by and through their attorneys, Brooks Kushman P.C., and for the reasons stated in the accompanying brief, request that the Court grant its Motion for Summary Judgment of No Liability and grant all such other relief as this Court deems fair and equitable.

On Friday, May 12, 2006, Gubb and Lavallee's counsel contacted Mark Demorest, attorney for P&M to seek his concurrence in the relief requested.  Concurrence was not given.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By:   /s/ Seth E. Rodack
          MARK A. CANTOR (MI BAR NO. P32661)
          SETH E. RODACK (MI BAR NO. P55738)
          1000 Town Center
          Twenty-Second Floor
          Southfield, Michigan  48075-1238
          Tel:        (248) 358-4400
          Fax:        (248) 358-3351
          E-mail: mcantor@brookskushman.com
                    srodack@brookskushman.com

Dated:  **May 12, 2006**



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

————————

**MARTIN GUBB,**

        *Plaintiff/Counter-Defendant,*

                              **CASE NO. 2:04-CV-72432**

**v.**

                              **HON JULIAN ABELE COOK, JR.**

**P&M SERVICES, INC.,**

        *Defendant/Counter-Plaintiff.*

**and**

**P&M SERVICES, INC.,**

        *Plaintiff/Counter-Defendant,*

                              **CASE NO. 05-CV-71576**

**v.**

                              **HON JULIAN ABELE COOK, JR.**

**ANDRE LAVALLEE,**

        *Defendant/Counter-Plaintiff.*

---

| | |
|---|---|
| MARK A. CANTOR    (P32661) | MARK S. DEMOREST    (P35912) |
| SETH E. RODACK    (P55738) | NATALIE C. NAJARIAN    (P67614) |
| **BROOKS KUSHMAN P.C.** | **LAW OFFICES OF MARK S. DEMOREST, PLLC** |
| 1000 Town Center | 19853 W. Outer Drive |
| Twenty-Second Floor | Suite 100 |
| Southfield, Michigan  48075-1238 | Dearborn, Michigan 48124 |
| Tel:    (248) 358-4400 | Tel:    (313) 565-1330 |
| Fax:    (248) 358-3351 | Fax:    (313) 565-1318 |

*Attorneys for Defendant/Counter-Plaintiff*

---

# BRIEF IN SUPPORT OF GUBB AND LAVALLEE'S
# <u>MOTION FOR SUMMARY JUDGMENT OF NO LIABILITY</u>



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.    General Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.    Undisputed Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . 3

              1.    Gubb . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

                     a.    Facts Relating To L&P's Observance
                           Of Corporate Formalities . . . . . . . . . . . . . . . . . . 5

                     b.    Facts Relating To Advice Of Counsel . . . . . . . . . . . . 6

              2.    Lavallee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.   LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       A.    Because There Is No Genuine Issue Of Material Fact
             Concerning Gubb's Compliance With Corporate
             Formalities, The Corporate Veil Cannot Be Pierced . . . . . . . . . . . . 9

              1.    The Corporate Veil Must Be Pierced Before
                    Gubb Can Be Held Personally Liable . . . . . . . . . . . . . . . . 9

              2.    Piercing The Corporate Veil Under Massachusetts Law . . . . . . 11

              3.    *Evans* Applied To The Facts Here . . . . . . . . . . . . . . . . . . 12



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

B.    Because Gubb Acted On The Advice Of Counsel, He Cannot Be Held Liable For Inducing Infringement Of The Patents-In-Suit . . . . . . . . . . . . . . . . . . . . . . . 13

C.    Because Lavallee Was An Employee Of L&P, He Is Protected From Personal Liability By The Corporate Veil . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1.    No Liability For Direct Infringement . . . . . . . . . . . . . . . . . . 16

2.    No Liability For Inducing Infringement . . . . . . . . . . . . . . . . . 17

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Al-Site Corp. v. VSI International, Inc.*,
    174 F.3d 1308 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Art Metal Works Inc. v. Henry Lederer & Bro., Inc., et al.*,
    36 F.2d 267 (S.D.N.Y. 1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cazier v. Mackie-Lovejoy Mfg. Co., et al.*,
    138 F. 654 (7th Cir. 1905) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Evans v. Multicon Const. Corp.*,
    30 Mass. App. Ct. 728 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Gregory v. Helvering*,
    293 U.S. 465 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hoover Group, Inc. v. Custom Metal Craft, Inc.*,
    84 F.3d 1408 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kirno Hill Corp. v. Holt*,
    618 F.2d 982 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*,
    367 F.3d 1381 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Manville Sales Corp. v. Paramount Systems, Inc.*,
    917 F.2d 544 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 13, 14, 15, 16

*Microchemical, Inc. v. Great Plains Chemical Co., Inc.*,
    194 F.3d 1250 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

*Semiconductor Energy Lab. Co. Ltd. v. Samsung Electronics America, Inc,.*
  *et. al.,*
    116 F.3d 1497 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sensonics, Inc. v. Aerosonic Corp.,*
    81 F.3d 1566 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United Nickel Co. v. Worthington,*
    13 F. 392 (D. Mass. 1882) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATUTES

15 U.S.C. § 271(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## MISCELLANEOUS

Linda J. Oswald, *The Personal Liability of Corporate Officers for Patent*
    *Infringement*, 44 IDEA, 1156, 166 N.2 (2003)
    (citing *Wilden Pump & Engineering Co. v. Pressed & Welded*
    *Products Co.*, 655 F.2d 984, 990 (9th Cir. 1981)) . . . . . . . . . . . . . . . . . . . . . . . . . 17



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

## ISSUE PRESENTED

1.      Does Gubb lack personal liability for direct patent infringement for the alleged infringing acts of L&P Converters, Inc. where there is no basis for piercing the corporate veil?

       Gubb answers: **Yes**.

2.      Does Gubb lack personal liability for inducing infringement by L&P Converters, Inc. because he sought out, obtained and relied upon the advice of counsel who advised Gubb that L&P Converters, Inc. did not infringe the patents-in-suit and that the patents-in-suit were invalid?

       Gubb answers: **Yes**.

3.      Does Lavallee lack personal liability for direct patent infringement because his acts of alleged infringement were undertaken as an employee of L&P Converters, Inc., at its direction, and within the scope of his employment?

       Lavallee answers: **Yes**.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

# I.  <u>INTRODUCTION</u>

P&M Services, Inc.'s ("P&M") claims against Martin Gubb ("Gubb") and Andre Lavallee ("Lavallee") (collectively "defendants") for patent infringement and for inducing infringement are baseless.  Gubb was the owner and president of L&P Converters, Inc. ("L&P"), a company that, for more than forty years, repaired damaged rolls of paper. P&M has accused L&P of infringing the patents-in-suit and seeks here to hold Gubb personally liable for L&P's alleged infringement.  To do so requires piercing L&P's corporate veil.  But because Gubb respected all corporate formalities, there is no basis for piercing the corporate veil.  Furthermore, his business decisions were based on the advice of counsel that there was no infringement and that the patents were invalid, meaning that he lacked the requisite intent to induce infringement.

P&M's lawsuit against Lavallee is an abuse of process.  At all times, Lavallee was merely an employee of L&P with no ownership interest or control whatsoever. Nevertheless, P&M seeks to hold Lavallee personally liable along with Gubb for the alleged infringing acts of L&P.  But the law is clear that employees acting within the scope of their employment cannot be held personally liable for the employer's infringement.

For all the reasons set forth below, P&M's claims must be dismissed.

**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

-1-                                                    E-FILED 5/12/06

## II. FACTS

### A. General Background

P&M is in the business of re-sizing damaged rolls of paper by using a saw to cut off the damaged end of the paper roll. P&M asserts that it is the owner by assignment of U.S. Patent No. 5,964,024 ("the '024 patent") and U.S. Patent No. 6,282,766 ("the '766 patent") relating to a method and a machine for removing the damaged end from a roll of paper. (*See* Exhibit A, the '024 patent and Exhibit B, the '766 patent.) Marcus Wallace ("Wallace") is the inventor of both the '766 and '024 patents.

Long before the inventions described in the '024 and '766 patents were invented, third party L&P Converters, Inc. ("L&P") had been providing the same services, *i.e.*, they were "converting" damaged rolls of paper by cutting off the damaged end. L&P was owned by Gubb, who also acted as its president. Over the 40 years of L&P's existence, it used a variety of different machines to convert paper. While Wallace was developing the method and apparatus claimed in the '024 and '766 patents, L&P independently developed a new saw of its own, the Precision Paper Saw.[1] Sterling Technologies, Inc. ("Sterling"), another company owned by Gubb, manufactured the Precision Paper Saw.

In a series of lawsuits, P&M has accused L&P and Sterling of infringing the '024 and '766 patents. P&M sued L&P and Sterling for patent infringement twice, first in Florida and then, when the Florida action was dismissed for lack of personal jurisdiction,



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel (248) 358-4400
Fax (248) 358-3351

www.brookskushman.com

---

[1] P&M calls its saw the Paper Sizer.

E-FILED 5/12/06

P&M sued L&P again in Wisconsin.  In Wisconsin, the patent infringement counts against Gubb were dismissed for improper venue.  The remainder of the Wisconsin suit is currently stayed pending the conclusion of L&P's ongoing bankruptcy proceedings.

Gubb filed the present action seeking a declaratory judgment that he has no personal liability for L&P's purported infringement of the '024 and '766 patents.  P&M counterclaimed against Gubb for infringement of the '024 and '766 patents and for inducing infringement.  (*See* Counterclaim, filed August 6, 2004, docket #5 (Case No. 2:04-CV-72432).)

Additionally, in Massachusetts, P&M filed a lawsuit against Lavallee, a mere employee (former) of L&P, alleging infringement and inducing infringement of the '024 and '766 patents based on his activities as an employee of L&P.  The action against Lavallee has been transferred here to the Eastern District of Michigan and consolidated with the action against Gubb.  (*See* Complaint, filed April 21, 2005, docket #1 (Case No. 05-CV-71576).)


**B.**    **Undisputed Material Facts**

**1.**    **Gubb**

Gubb is the sole shareholder and President of L&P Converters, Inc. ("L&P"). (*See* Exhibit C, Gubb Declaration, ¶ 2.)  Gubb was also the majority shareholder and president of Sterling Technologies, Inc. ("Sterling"), a now defunct Massachusetts corporation.  (*Id.* at ¶ 3.)

In P&M's counterclaim against Gubb, P&M seeks to hold Gubb personally liable for the alleged infringing acts of L&P and Sterling.  (*See* Counterclaim, filed August

**B|K**

**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

6, 2004, docket #5 (Case No. 2:04-CV-72432), ¶¶ 4-7, 14-22.)  P&M also seeks to hold

Gubb personally liable for inducing L&P and Sterling's alleged infringement.  (Counterclaim,

filed August 6, 2004, docket #5 (Case No. 2:04-CV-72432), ¶ 23.)

        In discovery, Gubb asked P&M to identify all facts and bases for piercing L&P

and Sterling's corporate veil, to identify each and every act for which P&M sought to hold

Gubb directly liable for infringement of the '024 and '766 patents, and all facts and bases

supporting P&M's assertion that Gubb is liable for inducing infringement of the '024 and '766

patents.  (*See* Exhibit D, P&M's answer to Gubb's second set of interrogatories.)  P&M

responded as follows:

> Martin Gubb was the sole shareholder and President of Sterling and L&P Converters.  He controlled all of the actions of these entities, specifically directing the actions of Andre Lavallee, Alex Infantino and others in observing and photographing P&M's Paper Sizer machine, manufacturing infringing machines, marketing the infringing machines for sale, selling at least one Infringing machine, marketing the services of the infringing machines, and using the infringing machines to cut rolls of papers.  Gubb was directly in control of the actions of his employees.  See the deposition testimony of, among others, Alex Infantino, Andre Lavallee, Margaret DeSantis and Jack Clemmons.

> L&P and Sterling were not operated as separate corporate entities.  For example, Sterling was supposedly a separate corporation from L&P, but in many instances Sterling was described in correspondence marketing the machine as merely a division of L&P.

> P&M also believes that the evidence will show that Gubb disregarded the separateness of the corporate entities in their financial dealings with each other and with Gubb.  He manipulated the companies' finances to his personal advantage.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

Gubb was listed as the contact person in advertisements for the Sterling Precision Paper Saw.

Gubb also shut down one business (L&P Converters) and then opened another operating from the same premises (L&P Paper) to try to defeat the creditors of L&P Converters.

(*See* Exhibit D, p. 3.)

### a.   Facts Relating To L&P's Observance Of Corporate Formalities

L&P is approximately forty years old.  (*See* Exhibit C, Gubb Decl., ¶ 4.) Sterling was formed in 1992. (*Id.* at ¶ 5.)  Gubb was the President and sole stockholder of L&P.  (*Id.* at ¶ 2.)  He was the president and majority shareholder of Sterling.  (*Id.* at ¶ 3.)

At no time during Gubb's ownership and/or operation of L&P did he ever intermingle his own personal assets with those of L&P.   (*Id.* at ¶ 6.)  The same is true for Sterling.  (*Id.* at ¶ 7.)  Gubb observed all corporate formalities regarding L&P and Sterling. (*Id.* at ¶ 8.)  All filings required by the state of Massachusetts for L&P and Sterling were prepared and timely filed.  (*Id.* at ¶ 9.)  At no point did Gubb ever misappropriate or otherwise siphon away assets of L&P or Sterling.  (*Id.* at ¶ 10.)  Additionally, during the period of alleged infringement, from October 12, 1999 (the date the '024 issued) through April 2002 (the date that the last accused machine was disassembled), both L&P and Sterling were solvent.  (*Id.* at ¶ 11.)



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

**b.**     **Facts Relating To Advice Of Counsel**

At all times relevant to this issue of infringement, Gubb acted on the advice of counsel.  P&M took Gubb's deposition on January 16, 2006.  During Gubb's deposition, he testified that he had sought out and relied upon the opinion of Bruce Brunda, a licensed patent attorney, after Norkol/Fibercore Inc. raised allegations that L&P's use of the Precision Paper Saw infringed the '024 patent.[2]  Gubb testified as follows:

> Q.     I believe you indicated earlier, Mr. Gubb, that you first sought legal advice concerning your Precision Saw after a claim that you were violating Norkol/Fibercore's rights was made; is that correct?
> A.     Correct.
> Q.     And you then hired Mr. Brunda to, to do what?
> A.     To do a patent search and see if there was any validity to us possibly infringing the Norkol/Fibercore saw.
>
> * * *
>
> Q.     And so did he give you an oral opinion of non-infringement?
> A.     Yes.
>
> * * *
>
> Q.     And what specifically did Mr. Brunda tell you?
> A.     Mr. Brunda said he did a patent search.  The only thing he came up with was a core cutting device that was patented by Norkol/Fibercore that was not Patent 04, which wasn't even issued apparently at the time, and that there was nothing novel about what they were trying to patent.  There was no new-his words were there's no new art here and that it was his opinion that we were not infringing.

(*See* Exhibit E, Gubb Deposition Transcript, p. 55, ll.2-12; p. 55, ll. 18-20; p. 56, ll. 2-12.)



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

www.brookskushman.com

---

[2] Norkol/Fibercore is P&M's purported  predecessor in interest.

In October of 2000, Mr. Brunda provided Gubb with a written opinion relating to the '024 patent. (*See* Exhibit F, Brunda opinion letter.)  In October of 2001, L&P's new patent counsel, the late James Fritz, provided an additional opinion letter opining that the '024 patent was invalid.  (*See* Exhibit G, Fritz opinion letter.)

### 2.   Lavallee

P&M's Complaint against Lavallee alleges that he directly infringed, and induced infringement of, the '024 and '766 patents.  (*See* Complaint, filed April 21, 2005, docket #1 (Case No. 05-CV-71576), ¶¶ 9-24.)  Interrogatory no. 18 asked P&M to identify each and every act of alleged infringement by Lavallee of the '024 and '766 patents including each and every act of alleged inducement.   P&M's response enumerates ten specific acts attributed to Lavallee.   (*See* Exhibit H, P&M's answer to defendants' fourth set of interrogatories, pp. 3-5.)  To the extent that Lavallee engaged in the alleged activity, it was at the direction of his employer, L&P.[3]  (Exhibit I, Lavallee Decl., ¶ 3.)  P&M admits this is in response to Interrogatory No. 3.  There, P&M acknowledged that "Gubb was directly in control of the actions of his employees.  See the deposition testimony of . . .  Andre Lavallee . . . ."  (*See* Exhibit D, p. 3.)

---

[3] Lavallee disputes the characterization of his involvement in several of the enumerated activities and denies his involvement altogether with respect to others, but, for the purposes of this motion only, accepts P&M's list as accurate.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

### III.  LEGAL STANDARDS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Since P&M has the burden of proof on its claims, defendants need only raise the issue.  It is then incumbent on P&M to bring forth sufficient evidence to make a *prima facie* case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In a patent case, as in any other, summary judgment may be granted when there are no disputed issues of material fact, . . . or when the non-movant cannot prevail on the evidence submitted when viewed in a light most favorable to it.  *Knoll Pharm. Co. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1383 (Fed. Cir. 2004).  If the movant shows a *prima facie* case for summary judgment, then the burden of production shifts to the non-movant to present specific evidence indicating there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

-8-

E-FILED 5/12/06

# IV.  ARGUMENT

**A.**  **Because There Is No Genuine Issue Of Material Fact Concerning Gubb's Compliance With Corporate Formalities, The Corporate Veil Cannot Be Pierced**

**1.**  **The Corporate Veil Must Be Pierced Before Gubb Can Be Held Personally Liable**

In the case of *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544 (Fed. Cir. 1990), the Federal Circuit dealt with accusations of personal liability by corporate officers for the corporation's infringement.  The facts in *Manville* are very similar to those alleged by P&M.  In *Manville*, officers of a closely held corporation misappropriated the designs for a patented product and then directed the corporation to infringe plaintiff's patent.[4] *Id.* at 549.  As in the case at bar, the plaintiff in *Manville* sought to hold the individual officers of the defendant corporation personally liable for patent infringement and for inducing patent infringement.  *Id.*

The lower court found personal liability on the part of the individual officers, but the Federal Circuit reversed.  On the issue of the officer's liability for direct infringement, the Federal Circuit stated as follows:

> More generally, a court may exert its equitable powers and disregard the corporate entity if it decides that piercing the corporate veil will prevent fraud, illegality, injustice, or a contravention of public policy, or prevent the corporation from shielding someone from criminal liability.  The court, however, must **"start from the general rule that the corporate entity**



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel    (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

---

[4] Here, P&M accuses L&P of photographing P&M's paper sizer, and then making the Precision Paper Saw using the photographs as a blueprint.  (*See* Exhibit H, ¶¶ 3-5.)

-9-                                    E-FILED 5/12/06

**should be recognized and upheld, unless specific, unusual circumstances call for an exception." Moreover, unless there is at least "specific intent to escape liability for a specific tort . . . the cause of justice does not require disregarding the corporate entity**.

*Id.* at 552 (emphasis added)[5].

In *Manville*, the Federal Circuit held that even though the individual officers of the defendant corporation had been personally involved in the infringement, including procuring and assisting in the copying of the patented designs, such conduct, including the copying itself, was within the scope of their employment and thus protected by the corporate veil. *Id.* at 552-53. The Federal Circuit stated that the lower court's determination that the corporate veil could be pierced was:

> . . . an abuse of its equitable power. The district court's findings establish that the officers were acting within the scope of their employment. The court's findings preclude any inference that Butterworth and DiSimone were attempting to avoid liability through the protection of the corporate veil. Accordingly, we reverse as to the liability of the officers in their individual capacities with respect to infringement under § 271(a).

*Id.* at 553.May 10, 2006

---

[5] Federal Circuit precedent has consistently followed *Manville*'s piercing requirement. For instance, in *Hoover Group, Inc. v. Custom Metal Craft, Inc.*, 84 F.3d 1408 (Fed. Cir. 1996), the Federal Circuit reversed a lower court's holding of personal liability for an officer of the defendant corporation because there was no basis for piercing the corporate veil. In *Al-Site Corp. v. VSI International, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999), the court found no personal liability on the part of an officer who made the decision to continue to use infringing hanger tags after receiving a cease and desist letter. The officer's decision was deemed to be within the scope of his authority as an employee of the defendant corporation and there being no evidence to support piercing the corporate veil, the lower court's finding of liability was reversed.



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

The Federal Circuit's mandate in *Manville* is quite clear — for an individual officer to be held personally liable for the infringing acts of the corporation, there must be some basis for piercing the corporate veil.  When evaluating whether to pierce the corporate veil, the Federal Circuit looks to state law.  *Semiconductor Energy Lab. Co. Ltd. v. Samsung Electronics America, Inc,. et. al.,* 116 F.3d 1497 (Fed. Cir. 1997).  L&P and Sterling are/were both Massachusetts corporations and the alleged infringement occurred in Massachusetts.

    **2.**    **Piercing The Corporate Veil Under Massachusetts Law**

Massachusetts has developed a twelve-part test for piercing the corporate veil.  In *Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728 (1991), the Massachusetts Court of Appeals enumerated twelve factors to consider when determining whether to pierce the corporate veil.  They are as follows:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity assets, or management; (4) thin capitalization; (5) non-observance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) non-functioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; (12) use of the corporation in promoting fraud.
>
> *Id.* at 733.



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

www.brookskushman.com

          E-FILED 5/12/06

3.      *Evans* **Applied To The Facts Here**

P&M has no evidence to support any of the factors needed to pierce the corporate veil.  P&M's response to Interrogatory No. 3 states that Gubb is the sole shareholder and president of L&P and Sterling, which relates to the first *Evans* factor. However, one-person corporations are authorized by law and should not lightly be labeled a sham.  *Gregory v. Helvering,* 293 U.S. 465, 469 (1935) ("finding corporation a sham not because it was owned entirely by one person, but because it had "no business or corporate purpose");  *Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2nd Cir. 1990) ("a corporation's veil may not be pierced merely because it has only one owner").  Thus, sole shareholder status, by itself, establishes nothing.

P&M also accuses Gubb of directing the conduct of his employees.  But directing the conduct and activities of one's employees is not one of the *Evans* factors.  Nor should it be.  What corporation does not control/direct the activities of its employees?  P&M also asserts that L&P and Sterling were not operated as separate corporate entities.  This relates to the third *Evans* factor.  But P&M has come forward with no evidence of any intermingling of assets, business activities or management between Gubb, on the one hand and Sterling or L&P on the other hand.   On the contrary, P&M admitted that it has no evidence of this when it stated "P&M also **believes** that the evidence will show that Gubb disregarded the separateness of the corporate entities in their financial dealings with each other and with Gubb."  (*See* Exhibit D, response to interrogatory no. 3.)

P&M further stated that "Gubb was listed as the contact person in advertisements for the Sterling Precision Paper Saw.  *Id.*  None of the *Evans* factors states



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax    (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

that a president's active roll in the operation of his company's business is a basis for piercing the corporate veil.

Finally, P&M states that "Gubb also shut down one business (L&P Converters) and then opened another from the same premises (L&P Paper) to try to defeat the creditors of L&P Converters." *Id.* This assertion does not relate to any of the *Evans* factors. Furthermore, L&P Paper was not created until 2004, two years after the litigated transaction.

P&M failed to come forward with any evidence relating to pervasive control (*Evans* Factor No. 2), thin capitalization (*Evans* Factor No. 4), non-observance of corporate formalities (*Evans* Factor No. 5), absence of corporate records (*Evans* Factor No. 6), non-payment of dividends (*Evans* Factor No. 7), insolvency at the time of the litigated transaction (*Evans* Factor No. 8), siphoning away of corporate assets by the dominant shareholder (*Evans* Factor No. 9), non-functioning of officers and directors (*Evans* Factor No. 10), use of the corporation for transactions of the dominant shareholder (*Evans* Factor No. 11) or use of the corporation in promoting fraud (*Evans* Factor No. 12). Because P&M has failed to meet its burden to show some basis for piercing the corporate veil, there is no basis for finding Gubb personally liable for the alleged infringing acts of either L&P or Sterling. *Manville* at 553.

**B.     Because Gubb Acted On The Advice Of Counsel, He Cannot Be Held Liable For Inducing Infringement Of The Patents-In-Suit**

P&M alleges that by directing L&P to use its Precision Paper Saw, and to sell one to a third party, Gubb induced infringement by L&P of the '024 and '766 patents. However, Gubb sought out and obtained the opinion of not one, but two patent attorneys, both



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel     (248) 358-4400
Fax     (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

of whom advised him that L&P's conduct would not violate P&M's patent rights.  As set forth above in the Statement of Undisputed Material Facts, Gubb's first patent counsel, Bruce Brunda, advised Gubb that L&P's use of its Precision Paper Saw did not infringe the patents-in-suit. P&M has offered no evidence to rebut this.

Gubb sought out and received Mr. Brunda's advice as soon as he was notified of P&M's patent rights. (*See* Exhibit C, Gubb Declaration, ¶ 15.)  Gubb relied on Mr. Brunda's advice when directing L&P to continue its paper converting activities.  (*See* Exhibit C, ¶ 16.)[6]

As an additional precaution, Gubb also obtained a written opinion of his new patent counsel, James Fritz, advising Gubb that the '024 patent was invalid.  (*See* Exhibit C, ¶ 17; *see* Exhibit G.)  At no time did Messrs. Fritz or Brunda alter or rescind their opinions. Consequently, at all times relevant to the allegations in P&M's counterclaims against Gubb, Gubb acted with a good faith belief that L&P's conduct was not infringing and that the '024 patent was invalid.[7]  Again, PM has no evidence to rebut this.

Federal Circuit precedent is quite clear.  To be liable for inducing infringement, an actor must have had a specific intent to cause infringement.  In *Manville*, the Federal Circuit stated as follows:

---

[6] Brunda even prepared a written opinion on October 10, 2000 to alleviate any remaining infringement concerns.  (*See* Exhibit F.)

[7] The '766 patent did not issue until September 4, 2001.  Gubb directed L&P to cease and desist all allegedly infringing activity within just a few months of receiving notice that the '766 patent had issued.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

> It must be established that the defendant possessed **specific intent** to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement.  **The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts _and_ that he knew or should have known his actions would induce actual infringements**.

> _Manville_ at 553 (emphasis added).

In _Manville_, the Federal Circuit held that if an accused inducer had a good faith belief, **based on advice of counsel**, that the acts in question did not infringe or that the patents asserted were invalid, then he could not have had "knowledge" that the induced acts constituted an actual infringement and thus lacked the specific intent needed to find inducement.  _Id._ at 554.

Other Federal Circuit opinions support a finding of non-liability for corporate officers accused of inducement where they acted under the advice of counsel.   In _Microchemical, Inc. v. Great Plains Chemical Co., Inc._, 194 F.3d 1250 (Fed. Cir. 1999), a corporate officer received and relied on advice of counsel when redesigning accused machinery and accordingly was deemed to lack the requisite specific intent to support a finding of inducement.  Also, in the _Al-Site Corp._ case, the corporate officer sought an opinion of counsel before deciding to continue with the accused activity.  This fact buttressed the court's decision of no personal liability for the corporate officer.

Because Gubb had a good faith belief that L&P's conduct did not infringe the '024 patent and further that the '024 patent was not valid, he did not have the requisite specific intent to induce infringement and cannot be liable for inducing infringement.



**Brooks Kushman P.C.**
1000 Town Center, 22nd Fl.
Southfield,  MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

**C.     Because Lavallee Was An Employee Of
        L&P, He Is Protected From Personal
        Liability By The Corporate Veil**

    **1.     No Liability For Direct Infringement**

        Lavallee was, at all relevant times, an employee of L&P.  (*See* Exhibit I, Lavallee Decl., ¶ 3.)  This is undisputed.  As set forth above, an employee's immunity from liability for patent infringement was made clear in *Manville*.  All of Lavallee's alleged acts were undertaken at L&P's direction and within the scope of his authority as its agent.  *Id.* Under these facts, Lavallee cannot be held liable for direct infringement of the patents-in-suit unless there is some basis to pierce the corporate veil.  *Manville* at 553.  As discussed above, here there is no basis to pierce.[8]

        There is no precedent for holding a mere employee such as Lavallee liable for his employer's alleged patent infringement.  In a 2003 article entitled "The Personal Liability of Corporate Officers for Patent Infringement" by Linda J. Oswald, Professor of Business Law at the University of Michigan, Professor Oswald noted that:

> To date, however, courts have not held non-officer employees
> individually liable for patent infringement committed by their
> corporations, but rather have extended liability only to 'persons
> who are significant shareholders in the corporation, executive
> officers or chief executives, presidents of the corporation, alter-

---

[8] The arguments in favor of dismissing P&M's claims against Lavallee is even more compelling than the arguments for Gubb.  While Gubb was the sole shareholder and CEO of L&P, Lavallee had no control, authority or ownership of L&P.  (*See* Exhibit I, ¶¶ 5-8.)  He was simply an employee doing as he was told.  (*Id.* at ¶ 3.)



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax  (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

egos of the company, or other high ranking individuals with personal control, supervision, and direction of both the company and the copying of the patent.'

Linda J. Oswald, *The Personal Liability of Corporate Officers for Patent Infringement*, 44 IDEA, 1156, 166 n.2 (2003)(citing *Wilden Pump & Engineering Co. v. Pressed & Welded Products Co.*, 655 F.2d 984, 990 (9ᵗʰ Cir. 1981)).[9]

Lavallee was a mere employee and P&M has no evidence that he acted outside the scope of his employment.   There is simply no basis or precedent for holding him personally liable for patent infringement.   P&M's claims against Lavallee should be dismissed.

### 2.   No Liability For Inducing Infringement

P&M's claim against Lavallee for inducement fairs no better.   The Federal Circuit has reserved personal liability for inducement in the corporate context to only officers, directors and/or shareholders.   In *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566 (Fed. Cir. 1996), the Federal Circuit stated:

The tort of "inducement" under 15 U.S.C. § 271(b), when applied to invoke personal liability, is premised on a concept of

---

[9] Additionally, there is ample precedent holding that individual employees cannot be held personally liable for patent infringement based on conduct occurring within the scope of their employment.  *See Art Metal Works Inc. v. Henry Lederer & Bro., Inc., et al.*, 36 F.2d 267 (S.D.N.Y. 1929) (the court found no liability for patent infringement on the part of a worker who acted ". . . within the scope of his employment . . ."); *Cazier v. Mackie-Lovejoy Mfg. Co., et al.*, 138 F. 654 (7ᵗʰ Cir. 1905) (". . . a corporation, can act only through its officers and agents.  We find nothing in the record to show that the appellee Dekanatel acted beyond the ordinary scope of his office."); and *United Nickel Co. v. Worthington*, 13 F. 392 (D. Mass. 1882) (stating the general principal that a mere workman making a patented article is not an infringer).



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

> tort feasance whereby **persons in authority and control** may in appropriate circumstances be deemed liable for wrongdoing, when inducing direct infringement by another.

*Id.* at 1575 (emphasis added).

Lavallee had no authority or control over L&P. (*See* Exhibit H, ¶¶ 5-8.) Rather, it was L&P that directed Lavallee's conduct. It would defy logic to hold that Lavallee induced L&P to infringe when it was L&P that told Lavallee what to do.[10]

---

[10] Under the theory enunciated by P&M, the floodgates to litigation would open and wreak havoc on corporate America. By way of example, under P&M's theory, a company like General Motors would be paralyzed by a lawsuit for patent infringement because its line workers would be susceptible to lawsuits for inducing General Motors to infringe by virtue of their work on the line. This is not the law.



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

## VI.  CONCLUSION


For all of the reasons set forth above, defendants pray that this Honorable Court grant their motion for summary judgment and dismiss P&M's claims against Gubb and Lavellee and grant all such other relief as this Court deems fair and equitable.


Respectfully submitted,

**BROOKS KUSHMAN P.C.**

By:   /s/ Seth E. Rodack
        MARK A. CANTOR (MI BAR NO. P32661)
        SETH E. RODACK (MI BAR NO. P55738)
        1000 Town Center
        Twenty-Second Floor
        Southfield, Michigan  48075-1238
        Tel:      (248) 358-4400
        Fax:     (248) 358-3351
        E-mail: mcantor@brookskushman.com
                 srodack@brookskushman.com


Dated:  **May 12, 2006**



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield,  MI 48075-1238
USA

Tel    (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on <u>May 12, 2006</u>, I electronically filed the foregoing **GUBB AND LAVALLEE'S MOTION AND BRIEF FOR SUMMARY JUDGMENT OF NO LIABILITY** with the Clerk of the Court for the Eastern District of Michigan using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing: Mark A. Cantor, Mark S. Demorest, Seth E. Rodack.

**BROOKS KUSHMAN P.C.**

By:   /s/ Seth E. Rodack
       MARK A. CANTOR (MI BAR NO. P32661)
       SETH E. RODACK (MI BAR NO. P55738)
       1000 Town Center
       Twenty-Second Floor
       Southfield, Michigan  48075-1238
       Tel:      (248) 358-4400
       Fax:     (248) 358-3351
       E-mail: mcantor@brookskushman.com
               srodack@brookskushman.com



**Brooks Kushman P.C.**
1000 Town Center, 22ⁿᵈ Fl.
Southfield, MI 48075-1238
USA

Tel   (248) 358-4400
Fax   (248) 358-3351

www.brookskushman.com

E-FILED 5/12/06